Filed 2/14/24  P. v. Hernandez CA2/2

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>FRANKLIN ANTONIO AMAYA HERNANDEZ,<br><br>Defendant and Appellant. | B327241<br><br>(Los Angeles County Super. Ct. No. PA096975) |

APPEAL from a judgment of the Superior Court of Los Angeles County, David Walgren, Judge.  Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Franklin Antonio Amaya Hernandez (defendant) appeals from the judgment entered after he was convicted of reckless driving causing injury. Challenging only the sentence imposed, defendant contends that Penal Code section 1385, subdivision (c)(2)(B) mandated the dismissal of one of two enhancements added to his sentence.[1] Finding no merit to defendant's arguments, we affirm the judgment.

## BACKGROUND

Defendant was charged with reckless driving causing injury in violation of Vehicle Code section 23103, subdivision (a) (count 1) and driving on the wrong side of a divided highway causing injury or death in violation of Vehicle Code section 21651, subdivision (a) (count 4). The information alleged that defendant proximately caused Susan D. to fracture a bone, within the meaning of Vehicle Code section 23105, subdivision (a), and personally inflicted great bodily injury upon K.D. and A.D. within the meaning of Penal Code section 12022.7, subdivision (a).[2] The following aggravating factors, listed in California Rules of Court, rule 4.421(a)(1) were alleged: the offenses involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness; and, as permitted by rule 4.421(c), that defendant was speeding on a public street, endangering the lives of others.

Defendant was found guilty as charged and the enhancements were found true as to count 1. In a bifurcated trial

---

[1] All further unattributed code sections are to the Penal Code unless otherwise stated.

[2] As K.D. and A.D. are minors, we do not use their surname or the shared surname of relatives mentioned here.

2

of the aggravating factors the jury found both true. On January 4, 2023, the trial court sentenced defendant on count 1 to seven years four months in prison, comprised of the low term of 16 months plus two 3-year great bodily injury enhancements. The sentence in count 4 was stayed pursuant to section 654.

Defendant filed a premature, but deemed timely, notice of appeal from the judgment.

**Prosecution evidence**

On June 21, 2021, between 8:00 p.m. and 9:00 p.m., Susan D. drove her white Toyota Highlander home from the market with her seven-year-old son K.D., her 10-year-old daughter A.D., her husband's cousin Rolman D. and a friend also in the car. Rolman testified that after he heard Susan scream, "Look at that car," he saw a car travelling at a high rate of speed recklessly overtaking slower cars by using the middle turn lane. As the driver tried to move the car back to the right side of the road, it began to zigzag and the driver appeared to lose control. The car crossed to the wrong side of the street toward the front of Susan's car, where they collided, despite Susan's efforts to avoid contact. Rolman heard two collisions, one in the front and another on their right side. The impact was very hard and sounded like a loud explosion.

Susan testified the speed limit was 35 or 40 miles per hour. She estimated defendant's speed while he was passing other cars to be around 60 or 70 miles per hour. It appeared to her that defendant was racing other cars. Susan had tried to move to the right, but defendant's car hit her car and caused her car to crash into other cars.

Two eyewitnesses testified to having seen two cars racing before the collision. Danny Dominguez saw them in his rearview mirror travelling about 70 miles per hour, when one of the cars

lost control, drove on the wrong side of the road, and collided with an oncoming vehicle. The other racing vehicle was not involved in the crash and drove off. Sariah Castanon was sitting with her children and boyfriend near a food truck when she saw the two racing cars weaving in and out of traffic trying to pass each other at a high rate of speed. She saw one car drive on the wrong side of the street and collide with another car close to the food truck.

Following the crash, Susan saw the driver of the car that hit her car and identified him both on the scene and in court as defendant. Susan and her passengers were taken to the hospital. Susan sustained five fractures in the toes of her left foot, a fracture to her right ankle bone, an injury to the top part of her leg, a concussion, a contusion to the right side of her breast, and a fracture to the left side of her face. She was confined to a bed with her legs raised for three months. K.D. suffered an injury to the vertebrae in his lower back, was confined to his bed for six weeks and had to relearn to walk using a walker. He also lost a small part of his tongue. A.D. suffered fractures to both of her femurs, which required two surgeries as well as physical therapy for a year. Rolman suffered two broken teeth and bruises on his arm, hip, back and lower back.

**Defense evidence**

Defendant testified that he was driving his Honda Civic when it crashed into the Highlander but claimed his car experienced mechanical problems, which caused it to go out of control and veer to the left into the path of oncoming traffic. He claimed to have swerved the Civic toward the sidewalk to avoid a collision and found he was unable to steer the car, which did not stop when he applied the brakes, but zigzagged and collided with the Highlander. Defendant had owned the car for a year but

denied he had prior knowledge of any mechanical problems. He also denied ever participating in street races.

## DISCUSSION

Defendant contends that section 1385, subdivision (c)(2)(B) prohibits the imposition of more than one enhancement in a single case. He concludes that one of the great bodily injury enhancements should therefore be dismissed, based upon the Legislature's use of the word "shall" in subdivision (c)(2)(B) of section 1385, which reads in part that "all enhancements beyond a single enhancement shall be dismissed." Defendant cites the general rule of statutory construction the word "shall" is mandatory, relying on *People v. Heisler* (1987) 192 Cal.App.3d 504, 507. However, defendant does not refer to the observation in that case that "the word 'shall' has sometimes been judicially construed as directory or permissive." (*Id.* at p. 506.)

"As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose." (*People v. Murphy* (2001) 25 Cal.4th 136, 142.) "'Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning.'" (*People v. Ruiz* (2018) 4 Cal.5th 1100, 1105.) "Whether a particular statute is intended to impose a mandatory duty is a question of interpretation for the courts." (*People v. Lara* (2010) 48 Cal.4th 216, 225.) "'[T]here is no simple, mechanical test for determining whether a provision should be given "directory" or "mandatory" effect.'" (*People v. Allen* (2007) 42 Cal.4th 91, 101-102.)

5

In *People v. Walker* (2022) 86 Cal.App.5th 386, 396-399 (*Walker*), review granted March 22, 2023, S278309,[3] our court observed that "on its face and considered in isolation, the phrase 'all enhancements beyond a single enhancement shall be dismissed' *seems* to fairly unambiguously dictate that, if there is more than one enhancement, all but one 'shall' be dismissed." (*Id*. at p. 396, italics added.) However, "we are not permitted to pluck this phrase out of its placement in the statute and consider it in isolation; instead, we are required to consider where it fits into the ""context of the statute as a whole.""" (*Ibid*., quoting *People v. Valencia* (2017) 3 Cal.5th 347, 358.)

Section 1385 governs the trial court's authority to strike or dismiss enhancements. Subdivision (c)(1) provides that the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute. Subdivision (c)(2) allows, "[i]n exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the

---

[3] The California Supreme Court granted review and limited the issue to be briefed to the following issue: "Does the amendment to Penal Code section 1385, subdivision (c) that requires trial courts to 'afford great weight' to enumerated mitigating circumstances (Stats. 2021, ch. 721) create a rebuttable presumption in favor of dismissing an enhancement unless the trial court finds dismissal would endanger public safety?" (*Walker*, S278309, Supreme Ct. Mins., Mar. 22, 2023, p. 338.)

enhancement, *unless* the court finds that dismissal of the enhancement would endanger public safety."

Of the nine mitigating factors listed in section 1385, subdivision (c)(2)(A) through (I), defendant relies on (B): "Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed." The language relied on by defendant is only one of nine mitigating circumstances the court must consider in affording great weight to evidence offered by the defendant.

In *Walker* we concluded that section 1385's use of the phrase "great weight" in addition to the "'shall/unless' dichotomy . . . erects a [rebuttable] presumption in favor of the dismissal of the enhancement unless and until the court finds that the dismissal would 'endanger public safety' as that term is defined in section 1385." (*Walker, supra*, 86 Cal.App.5th at pp. 391, 397, 399, review granted.) Furthermore, we held: "As the plain text of section 1385 repeatedly emphasizes, its purpose is to grant trial court *discretion* to dismiss enhancements." (*Id.* at p. 397.)

Section 1385 grants discretion in subdivision (c)(1) to dismiss enhancements "in furtherance of justice" and in subdivision (c)(2) by listing mitigating circumstances for the court to consider "[i]n exercising its discretion under this subdivision" to prove that any of them, "unless the court finds that dismissal of the enhancement would endanger public safety." Following the mitigating factors is subdivision (c)(3): "While the court may exercise its discretion at sentencing, this subdivision does not prevent a court from exercising its discretion before, during, or after trial or entry of plea." Subdivision (c)(4) provides that the mitigating circumstances are not exclusive.

Taken together these provisions communicate a requirement of balancing of factors, in other words, exercising discretion.  In *Walker* we reviewed the legislative history of Senate Bill No. 81 (2021-2022 Reg. Sess.), which lead to subdivision (c) of section 1385.  (Stats. 2021, ch. 721 § 1; see *Walker, supra*, 86 Cal.App.5th at pp. 397-398, review granted.) "[T]he purpose of Senate Bill No. 81, as reflected in the Legislative Digest, is to encourage exercise of that discretion by making dismissal mandatory if it is in the furtherance of justice to do so, and to specify the mitigating circumstances that are to be given great weight in that exercise of discretionary balancing. Nothing in Senate Bill No. 81 indicates an intent to deprive trial courts of their discretion altogether—either generally or more specifically in the subset of cases where multiple enhancements are alleged."  (*Walker,* at pp. 397-398.)

Defendant asserts that *Walker* was incorrectly decided, while acknowledging that other courts have also rejected the argument that the word "shall" in section 1385, subdivision (c) precludes any exercise of discretion.  (See, e.g., *People v. Mendoza* (2023) 88 Cal.App.5th 287, 295-296 (*Mendoza*); *People v. Anderson* (2023) 88 Cal.App.5th 233, 238-240, review granted April 19, 2023, S278786 (*Anderson*); *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1096-1098, review granted April 12, 2023, S278894 (*Ortiz*);[4] *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 18-

[4]      The California Supreme Court deferred further action in *Anderson* and *Ortiz* pending consideration and disposition of the appeal in *Walker*, S278309.  Both the *Anderson* and *Ortiz* courts disagreed with *Walker* that "shall" created a rebuttable presumption.  (See *Anderson, supra*, 88 Cal.App.5th at p. 240, review granted; *Ortiz, supra*, 87 Cal.App.5th at pp. 1096-1098, review granted.)

21; see also *People v. Hiller* (2023) 91 Cal.App.5th 335, 351.) Defendant contends that these cases were wrongly decided as well.

Defendant argues that a rule of statutory construction requires every word in a statute be given a meaning, and construing the word "shall" as discretionary would cause it to be "written out" of the statute in violation of that rule. Defendant has neglected to cite authority for his argument, and we disagree that the cited cases were wrongly decided. Other rules of statutory construction require, "in reviewing the text of a statute, we must follow the fundamental rule of statutory construction that requires every part of a statute be presumed to have some effect and not be treated as meaningless unless absolutely necessary. 'Significance should be given, if possible, to every word of an act. [Citation.] Conversely, a construction that renders a word surplusage should be avoided.'" (*People v. Arias* (2008) 45 Cal.4th 169, 180.) This rule does not support defendant's argument, as our interpretation in the context of the provisions of subdivision (c) of section 1385 does not "write out" the word "shall" or render it surplusage. Rather, it is qualified by the term, "unless the court finds that dismissal of the enhancement would endanger public safety." (See *Walker, supra*, 86 Cal.App.5th at pp. 391, 397, review granted.) Disregarding that qualification would render it surplusage, as it "would require a court to dismiss any enhancement when application of the enhancement could result in a sentence greater than 20 years *regardless of whether dismissal would endanger public safety*." (*Mendoza, supra*, 88 Cal.App.5th at p. 296.)

Moreover, "[w]e also must avoid interpretations that lead to absurd results." (*Mendoza, supra*, 88 Cal.App.5th at p. 296, citing *People v. Bullard* (2020) 9 Cal.5th 94, 106.) Without the

9

public safety qualification, the sentencing court could be required to risk public safety, an absurd result that cannot be what the Legislature intended. (*Mendoza, supra*, at p. 296.)

Here the trial court expressly found that dismissal of an enhancement would endanger public safety, as defined by section 1385, subdivision (c)(2) as a "likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." The court based its decision on defendant's failure to show any concern for anybody's safety both before, during, or after his racing; that defendant showed no remorse; and that he lied during his testimony. By convicting him the jury demonstrated their disbelief of defendant's testimony, and the jury found beyond a reasonable doubt the aggravating factor that his acts disclosed a high degree of cruelty, viciousness, or callousness. Defendant has not claimed the court abused its discretion, nor has he pointed to any evidence in the record that might contradict the court's assessment of defendant's dangerousness or the jury's findings. We conclude the trial court did not err.

## DISPOSITION

The judgment is affirmed.

_____
CHAVEZ, J.

I concur:


_____
LUI, P. J.

10

*People v. Hernandez*, B327241
ASHMANN-GERST, J., Concurring in the judgment.

I agree with the majority that the trial court did not err in refusing to strike one of the enhancements added to defendant's sentence.  (Pen. Code, § 1385.)[5]  I write separately to clarify the basis for my opinion.

Defendant argues that "[t]he sentence for one of the great bodily injury enhancements should be dismissed because section 1385, subdivision (c)(2)(B) forbids imposition of more than one enhancement in a case."  Like my colleagues, I am not convinced.

"Prior to January 1, 2022, section 1385 provided trial courts with discretion to dismiss sentencing enhancements in the interest of justice.  The statute did not provide direction as to how courts should exercise that discretion.  In October 2021 the Legislature passed and the Governor signed Senate Bill No. 81 (2021–2022 Reg. Sess.) . . . , which, effective January 1, 2022, amended section 1385 to provide guidance regarding the exercise of discretion in dismissing sentencing enhancements.

"Section 1385, subdivision (c), now provides in part, '(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.  [¶]  (2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless

---

[5]     All further statutory references are to the Penal Code.

the court finds that dismissal of the enhancement would endanger public safety.'" (*People v. Anderson* (2023) 88 Cal.App.5th 233, 238–239, review granted Apr. 19, 2023, S278786.) The mitigating circumstance relevant here provides, "(B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed." (§ 1385, subd. (c)(2)(B).)

Defendant argues that the use of the word "shall" in the statute required the trial court to dismiss all but one of the sentencing enhancements. Consistent with our decision in *People v. Walker* (2022) 86 Cal.App.5th 386, review granted Mar. 22, 2023, S278309 (*Walker*), I disagree. As we noted in *Walker*, "the text and purpose of section 1385 in general, and Senate Bill No. 81 in particular, as well as the canons of statutory construction, counsel in favor of concluding that the phrase 'all enhancements beyond a single enhancement shall be dismissed' in subdivision (c)(2)(B) does not obligate trial courts to automatically dismiss all but one enhancement whenever a jury finds multiple enhancements to be true." (*Walker*, *supra*, at p. 396; see also *People v. Anderson, supra*, 88 Cal.App.5th at p. 239; see also *People v. Mendoza* (2023) 88 Cal.App.5th 287, 295–298.)

Defendant argues that *Walker* and its progeny were wrongly decided. Unless and until the Supreme Court tells us otherwise, I adhere to our opinion in *Walker*. (Cal. Rules of Court, rule 8.1115(e).)


_____, J.
ASHMANN-GERST

2